Filed 8/23/16  P. v. Washington CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>WILLIAM WASHINGTON,<br><br>　　　　Defendant and Appellant. | B257234<br><br>(Los Angeles County<br>Super. Ct. No. LA070312) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gregory A. Dohi, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Christine C. Shaver, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Margaret E. Maxwell and Tannaz Kouhpainezhad, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

William Washington broke into the lockers of individuals exercising at multiple locations of 24 Hour Fitness gyms, and he stole cell phones, keys, credit cards, and other personal items. He then used the credit cards to make and attempt to make purchases at grocery stores and other retailers.

A jury convicted Washington of multiple counts of second degree burglary and theft of identifying information, and one count each of grand theft and possession of a controlled substance. The jury also found true, among other findings, the special allegations that Washington had suffered a prior conviction for first degree burglary and served a prior prison term for that conviction. The trial court sentenced Washington to an aggregate prison term of 24 years, 8 months.

Washington challenges his convictions and sentence on three grounds. First, he argues that the trial court erred by refusing his request for a continuance to give him and his attorney additional time to prepare his defense. Second, Washington contends that the trial court erred by sentencing him to consecutive sentences for each incident of identifying information theft that occurred shortly after the burglary of a 24 Hour Fitness location. Finally, Washington argues that the trial court improperly doubled the sentence for each conviction based on the prior strike for first degree burglary. Washington also asks us to direct the trial court to correct the abstract of judgment to reflect the trial court's oral pronouncement of sentence on the conviction for grand theft.

We conclude that the trial court did not abuse its discretion in denying Washington's motion for a continuance, and that any error in denying the request was harmless. We also conclude that the trial court properly sentenced Washington to consecutive sentences and sentenced him under the three strikes law, but that the trial court erred by failing to either strike or impose the prior prison enhancement. We also conclude that the abstract of judgment contains an error. Therefore, we affirm and remand with directions.

2

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    *The Crimes and the Charges*

The People charged Washington with 21 counts arising from incidents occurring on six separate dates.  In each of the first five incidents, Washington entered a 24 Hour Fitness gym, stole credit cards and other personal effects from lockers, then used the stolen credit cards to make purchases at various retailers.  The sixth incident involved a search of Washington's motel room, in which police discovered cocaine and stolen property.

### 1.    *January 13, 2012 (Counts 1-5)*

Video surveillance tapes showed Washington entering the 24 Hour Fitness club in North Hollywood at 3:12 p.m. on January 13, 2012, with a black bag over his shoulder. He left 13 minutes later.  Later that day, Doniyorbek Tohirov, who had worked out at the North Hollywood 24 Hour Fitness location that afternoon, called police to report that after his workout he found his locker open and his house and car keys, cell phone, and wallet containing his credit cards missing.  He also reported that someone had broken into his apartment and stolen his television, laptop, watch, cash, and other items.  Tohirov told police that at 4:03 p.m. someone had attempted to use one of his credit cards at a Target store in North Hollywood, but the register declined the transaction.  At 4:06 p.m., however, someone had used another of Tohirov's credit cards, and successfully purchased a frozen drink and a pretzel.   Video surveillance tapes showed two men, one of whom was Washington, purchasing items at the Target food court at the same time a purchase was made on Tohirov's card.

In connection with the January 13, 2012 incidents, the People charged Washington with second degree burglary (Pen. Code, § 459)[1] (counts 1 and 2), possession of personal identifying information with the intent to defraud and with a prior conviction (§ 530.5,

---

[1]    Undesignated statutory references are to the Penal Code.

3

subd. (c)(2)) (count 3), theft of an access card (§ 484e, subd. (b)) (count 4), and first degree burglary (§ 459) (count 5).

### 2. *January 18, 2012 (Counts 6-9)*

Video surveillance tapes showed Washington entering the 24 Hour Fitness club in Sherman Oaks at 10:30 a.m. on January 18, 2012, carrying a tan shoulder bag. The tapes showed him near the locker room at 11:11 a.m.

That same morning Nicholas Cady and Dino Vlachos worked out at the Sherman Oaks 24 Hour Fitness location. When they returned to their lockers they found their cell phones and wallets missing. Someone used one of Cady's credit cards to make a purchase at a Ralphs grocery store the same day. When Vlachos called his credit card companies to cancel his cards, he learned that they already had been used at nearby Ralphs and Target stores and to pay for cab fare. Receipts from the Target store in Van Nuys showed that someone attempted to charge $172.44 on Cady's and Vlacho's credit cards at 12:28 p.m. on January 18, 2012, but the cashier declined or voided both transactions.

In connection with the January 18, 2012 incidents, the People charged Washington with two counts of second degree burglary (§ 459) (counts 6 and 7), and two counts of possession of personal identifying information with the intent to defraud and with a prior conviction (§ 530.5, subd. (c)(2)) (counts 8 and 9).

### 3. *January 19-20, 2012 (Counts 10-12)*

Video surveillance tapes showed Washington entering a 24 Hour Fitness club in Sherman Oaks near the Sherman Oaks Galleria at 8:18 p.m. on January 19, 2012, carrying a tan bag, and leaving at 11:41 p.m. That night, Jaime Guerrero worked out at that location, and upon returning to his locker he discovered his lock and wallet were missing. He later learned someone had used his credit card at a Ralphs store and to pay for cab fare.

The operations manager of United Independent Taxi confirmed that a credit card with the same last four digits as Guerrero's was used at 12:37 a.m. on January 20, 2012 to pay for a cab ride originating near the Sherman Oaks Galleria. At 12:51 a.m., GPS signals placed the cab in a Ralphs parking lot on Ventura Boulevard.

Photographs from a surveillance video camera showed Washington at a register inside the Ralphs store on Ventura Boulevard at 12:41 a.m. on January 20, 2012. A receipt for a transaction from that register at that time showed that a credit card with the same last four digits as Guerrero's was used to purchase two $50 Visa gift cards.

In connection with the January 19 and 20, 2012 incidents, the People charged Washington with one count of second degree burglary (§ 459) (count 11), and two counts of possession of personal identifying information with the intent to defraud and with a prior conviction (§ 530.5, subd. (c)(2)) (counts 10 and 12).

### 4. *January 22, 2012 (Counts 13-16)*

Mohammad Heydarpour worked out at the 24 Hour Fitness club in West Hills on the afternoon of January 22, 2012. After exercising, he returned to the locker room and discovered that someone had broken the lock off his locker and had taken his wallet, cell phone, and keys. Items had also been removed from his car. The next day Heydarpour learned that someone had made multiple purchases on his Macy's card. Sales receipts from the Macy's store in Woodland Hills show eight purchases totaling over $2,300 charged to Heydarpour's card between 5:53 p.m. and 6:36 p.m. on January 22, 2012.

Washington, who testified at trial, admitted going to the 24 Hour Fitness club in West Hills on January 22, 2012 with his friend Jeremy Noriega. He stated that he went to the locker room, put his bag inside a locker, worked out for 15 minutes, and left the facility. He also testified that he went to Macy's with Noriega, where Noriega purchased clothes and a watch with a credit card.

In connection with the January 22, 2012 incidents, the People charged Washington with two counts of second degree burglary (§ 459) (counts 13 and 14), one count of using another's personal identifying information to obtain goods or services (§ 530.5, subd. (a))

5

(count 15), and one count of using an access card for the purpose of obtaining goods or services (§ 484g, subd. (a)) (count 16).

 5. *January 24, 2012 (Counts 17-19)*

Video surveillance tapes showed Washington entering the 24 Hour Fitness club in West Hills at 8:17 p.m. on January 24, 2012, and leaving 20 minutes later. That night, Alejandro Bernal, Charles Brickman, and Ali Sheikh worked out at that location, and upon returning to their lockers after exercising they discovered various items missing, including their wallets, keys, and cell phones. Someone also had rummaged through Brickman's car. After calling credit card companies to cancel their cards, Bernal learned that someone had tried to make a large purchase on his card at a nearby Target store, and Sheikh learned that one of his cards had been used at a Ralphs store in Canoga Park and at a Target store in Woodland Hills.

Transaction receipts from the Target store in West Hills confirmed that someone tried to make a $385 purchase on Bernal's credit card on January 24, 2012 at approximately 8:05 p.m., but the register declined the transaction. After voiding an item from the purchase and reducing the amount to $280, another attempt was made to charge Bernal's card, but the transaction was again declined. At 9:47 p.m., at the same Target store, someone purchased two $100 gift cards using Sheikh's credit card. Five minutes later someone attempted to make an additional $291 purchase on Sheikh's credit card, but that transaction was declined.

In connection with the January 24, 2012 incidents, the People charged Washington with one count of second degree burglary (§ 459) (count 17), and two counts of possession of personal identifying information with the intent to defraud and with a prior conviction (§ 530.5, subd. (c)(2)) (counts 18 and 19).

 6. *January 26, 2012 (Counts 20-21)*

Police tracked Washington to a motel in Sherman Oaks. On January 26, 2012 officers entered his motel room and found Washington sitting on a bed with various

6

items, including laptop computers, California drivers' licenses, numerous credit cards, wallets, and cash. Officers also found a plastic bag containing cocaine. In connection with the recovery of this evidence, the People charged Washington with one count of receipt of stolen property (§ 496, subd. (a)) (count 20), and one count of possession of a controlled substance (Health & Saf. Code § 11350, subd. (a)) (count 21). The People also alleged Washington had a prior conviction for violating Health and Safety Code section 11350.

### 7. *Special Allegations*

As to all counts, the People alleged that Washington had suffered one prior serious felony conviction within the meaning of section 667, subdivisions (b) through (i), and section 1170.12, subdivisions (a) through (d). The People also alleged that Washington had served a prior prison term under section 667.5, subdivision (b).

### B. *Washington's Representation and Requests for Continuances*

On November 26, 2012 Washington waived his right to counsel and the trial court granted his request to represent himself. The court advised Washington that self-representation "is almost always an unwise choice" and that the court would not treat Washington "with special leniency." The court found that Washington voluntarily and intelligently chose self-representation and was competent to represent himself.

On December 12, 2012 the court appointed James Tobin as standby counsel. The court also approved a request to pay a court-appointed investigator for 50 additional hours of research, and to hire a messenger to complete administrative tasks. The court considered and denied several motions that Washington filed, including a motion to dismiss based on the claim that the police had framed him using forged documents. The court agreed to consider appointing a handwriting expert to assist Washington with his defense.

On February 13, 2013 Washington asked to substitute William McKinney as his attorney, and the trial court relieved Tobin and the investigator. McKinney or an associate appeared on behalf of Washington seven times in March and April 2013.

On June 14, 2013 Washington again appeared with McKinney, but asked the court to relieve McKinney so he could again represent himself. The court stated, "[W]e've delayed these proceedings precisely to allow Mr. McKinney to be retained and to get up to speed on the case. We continued it a number of times to accommodate his schedule. And sir, you can't hire and fire lawyers and get continuances that way." The court agreed to relieve McKinney, but warned Washington that trial would begin about two weeks later on June 25. Washington nevertheless made an "oral motion" for a continuance. The court denied the motion, stating, "Delays due to substitution of counsel do not [constitute] good cause in a case of this age," and noted that the case was the oldest case on the court's docket. The court requested that Tobin appear with Washington at the next hearing.

On June 25, July 16, July 22, and August 12, 2013 Tobin appeared as Washington's attorney. The record on appeal does not include a transcript showing what transpired at those appearances, but the trial court apparently continued the trial date.

On August 13, 2013 the court held a hearing to determine whether Washington was medically fit and mentally competent to stand trial. With regard to his physical health, the court observed that Washington was cleared to be in court that day following a medical examination and that there was no medical impediment to his ability to stand trial. With regard to his mental health, Washington told Tobin he was unable to consider whether to accept a plea deal because he was "not thinking straight and just was not mentally in a place that he was able to [make that decision]." As a result, Tobin argued that Washington was unable to assist him with the defense of his case.

The court ruled Tobin had not presented substantial evidence of Washington's incompetence. The court based its determination "on the fact that the defendant's conduct in the past tends to indicate to me that it's more likely that he's trying to avoid going to trial at all costs. The defendant's arrest was over 18 months ago on this case.

8

He originally . . . had the public defender.  There was private counsel on the case.  He went pro per for a while.  Mr. McKinney, private counsel, was again on the case.  He went pro per again.  Standby counsel, you, Mr. Tobin – you were on the case.  There was a delay to allow [appointed co-counsel] Mr. Weiss . . . to be on the case.  There's been a constant flipping back and forth of representation. . . .  [A]t least three written motions to continue.  Thirteen appearances that I was able to count just since I've been the bench officer in this court. . . .  And as I've noted in the past, many of the motions, which he himself wrote and filed, show an acute understanding of these proceedings.  I think it's more likely that  . . . the defendant is simply unwilling to assist counsel, not unable.  I am not at this point going to order a [competency] hearing under Penal Code section 1368, and I am not going to suspend proceedings in this case."  The court then denied a motion for continuance filed by Washington the previous day, stating, "[t]he fact that Mr. Washington may not be cooperating with counsel does not in and of itself constitute good cause."

Later in the same proceeding, Tobin presented the court with a list of Washington's potential witnesses.  Tobin stated that the information "was just generated this afternoon" after going "through information that was dictated by Mr. Washington."  The list consisted of 15 names, including Washington's sister and his former co-defendant Noriega.  Tobin had not contacted or spoken with any of the potential witnesses and had not obtained a statement from any of them.  The prosecutor complained about the late disclosure, noting that section 1054.7 required Washington to submit his witness list 30 days before trial unless he could show good cause for failing to do so.  Tobin argued there was good cause because his access to Washington had been "prevented" for "a lengthy period of time," and he had "only been on the case for a relatively short period of time."  The court clarified that Tobin had only lost access to Washington for one week when Washington was housed in a different facility, but the court acknowledged Tobin had represented that Washington was uncommunicative during Tobin's meeting with Washington on August 2, 2013.

9

Rather than impose a sanction for Washington's late disclosure or grant the People a continuance, the court decided to "see how it all plays out." In protest, the prosecutor argued that this was the "third 7 of 10," and "Mr. Tobin was the attorney of record at the last 7 of 10."[2] Trial began on August 20, 2013.

### C. *The Verdicts and Sentencing*

The jury found Washington guilty on all counts except counts 4 and 20, theft of an access card and receipt of stolen property, which the People asked the court to dismiss, and count 5, first degree burglary, on which the jury found Washington not guilty. The jury found true several allegations related to prior crimes, including the allegation that Washington had served a prior prison term under section 667.5, subdivision (b), in case No. BA324564. None of the verdict forms asked the jury to determine whether Washington had suffered a prior conviction that qualified as a serious felony under section 667, subdivisions (b) through (i), but the jury found true the allegation that Washington had suffered a prior conviction in case No. BA324564 in connection with the verdict form for the prior prison term enhancement.

The court sentenced Washington to an aggregate prison term of 24 years, 8 months. On count 1 for second degree burglary of the 24 Hour Fitness in North Hollywood, the court sentenced Washington to six years, consisting of the high term of three years doubled under the three strikes law. On counts 2-3, 6-11, 13-15, and 17-19 the court sentenced Washington to 14 consecutive terms of eight months, doubled to 16 months. On counts 12 and 21 the court imposed concurrent terms of six years (three years doubled), and on count 16 the court imposed and stayed a term of six years (again, three years doubled). The court did not impose any additional sentence for Washington's prior prison term, nor did the court strike that enhancement. The court

---

[2] The prosecutor's reference to "7 of 10" refers to the seventh day of the 10-day period before the expiration of the period within which to bring a felony case to trial under section 1382.

10

gave Washington credit for 1,596 days and imposed various fines and fees. Washington filed a timely notice of appeal.

## DISCUSSION

A.    *The Court Did Not Abuse Its Discretion or Prejudice Washington in Denying His Motion for Continuance*

Washington argues that the trial court abused its discretion by denying his motion for continuance on August 13, 2013.[3] He contends that the trial court should have granted a continuance to enable Tobin more time to "get up to speed with discovery and . . . to discuss potential witnesses and testimony with [him]." Washington further contends the court's denial "put [Tobin] in the very difficult position of playing catch up while trial was in progress." Washington argues the trial court's error was prejudicial and requires reversal.[4]

1.    *Governing Law and Standard of Review*

Section 1050, subdivision (e), provides that "[c]ontinuances shall be granted only upon a showing of good cause." The trial court has discretion to determine whether good cause exists. (*People v. Fuiava* (2012) 53 Cal.4th 622, 650; *People v. Doolin* (2009) 45 Cal.4th 390, 450 (*Doolin*).) "The court must consider ""not only the benefit which the

---

[3]    Washington's briefs do not specify the date of the order he challenges. Based on his arguments, however, it appears he is appealing from the order denying his motion for a continuance on August 13, 2013.

[4]    Washington also contends the trial court "unconstitutionally deprived [him] of his right to prepare a defense," but he failed to raise this objection at trial. Washington thus forfeited any constitutional claim arising from the trial court's order denying his motion for a continuance. (See *People v. Huggins* (2006) 38 Cal.4th 175, 236-237 [defendant forfeited argument that admission of certain evidence violated due process by not objecting on that ground at trial]; *People v. Wilson* (2005) 36 Cal.4th 309, 351 ["because defendant objected at trial based only on statutory violations [citations], he has forfeited his state and federal constitutional challenges by failing to object on these grounds"].)

11

moving party anticipates but also the likelihood that such benefit will result, the burden on other witnesses, jurors and the court and, above all, whether substantial justice will be accomplished or defeated by a granting of the motion.'"'" [Citation.] While a showing of good cause requires that both counsel and the defendant demonstrate they have prepared for trial with due diligence [citation], the trial court may not exercise its discretion 'so as to deprive the defendant or his attorney of a reasonable opportunity to prepare.'" (*Doolin*, *supra*, at p. 450; see *People v. Fuiava*, *supra*, at p. 650 [quoting *Doolin*]; *People v. Jenkins* (2000) 22 Cal.4th 900, 1037 ["[a] showing of good cause requires a demonstration that counsel and the defendant have prepared for trial with due diligence"].) Washington has the burden of establishing an abuse of discretion. (*People v. Fuiava*, *supra*, at p. 650; *People v. Panah* (2005) 35 Cal.4th 395, 423.)

"When a continuance is sought to secure the attendance of a witness, the defendant must establish 'he had exercised due diligence to secure the witness's attendance, that the witness's expected testimony was material and not cumulative, that the testimony could be obtained within a reasonable time, and that the facts to which the witness would testify could not otherwise be proven.'" (*People v. Jenkins*, *supra*, 22 Cal.4th at p. 1037; see *Doolin*, *supra*, 45 Cal.4th at p. 451 [the defendant must show he could have produced "specific, relevant mitigating evidence within a reasonable time"]; *People v. Wilson* (2005) 36 Cal.4th 309, 352 ["[t]o support a continuance motion to secure a witness's attendance at trial, a showing of good cause requires a demonstration, among other things, that the defendant exercised due diligence to secure the witness's attendance"].)

2.     *The Trial Court Did Not Abuse Its Discretion by Denying the Request for a Continuance*

Washington testified that Noriega was responsible for the charged offenses. Washington admitted going to the various 24 Hour Fitness, Ralphs, Target, and Macy's locations, but he said Noriega was the one who broke into the lockers and used stolen credit cards to attempt to buy and to actually buy various goods and services. Washington acknowledged that on several occasions Noriega gave him a credit card and

asked him to buy specific items using the card, but he asserts that he did not "have knowledge of the crimes even though he was with Noriega close in time or at the time some of the crimes were committed." Washington also stated that the police "set him up" by placing stolen property and other items in his motel room and by forging his signature on a *Miranda* waiver form.

Washington argues that Tobin did not have enough time to contact and subpoena potential witnesses to support his version of the events.[5] Washington, however, did not demonstrate that he exercised due diligence to prepare for trial or to secure his witnesses' attendance. (See *People v. Wilson*, *supra*, 36 Cal.4th at p. 352; *People v. Jenkins*, *supra*, 22 Cal.4th at p. 1037.) In particular, Washington did not give Tobin a list of potential witnesses until August 13, 2013, approximately two months after the court had reappointed Tobin as attorney of record. Although it appears Tobin may have been unable to meet with Washington for one to two weeks, there were still six to seven weeks for Tobin to discuss potential witnesses with Washington. Tobin also previously represented Washington for approximately six weeks (from December 12, 2012 to February 1, 2013), and Washington had an additional seven months to prepare his defense while he was representing himself or McKinney was representing him. Washington did not provide any explanation for why he did not prepare or cooperate with his attorneys to prepare a witness list or to secure the presence of those witnesses before the eve of trial.[6]

---

[5] Washington also contends that the trial court precluded his attorney from developing support for the testimony of a handwriting expert, James Black. The trial court, however, ruled that Black's proffered testimony was inadmissible, and Washington does not appeal this ruling.

[6] At the time the trial court denied Washington's motion for continuance, trial was scheduled to begin the next day. Trial did not actually begin for another week because Washington was unable to come to court for medical reasons or otherwise refused to go to court.

Washington also did not show he could have produced "specific, relevant mitigating evidence within a reasonable time." (See *Doolin*, *supra*, 45 Cal.4th at p. 451.) He contends his "counsel did what he could in a very short time to subpoena individuals" on his witness list, but testimony during a *Marsden* hearing (*People v. Marsden* (1970) 2 Cal.3d 118) revealed that Washington provided Tobin incomplete contact information for several of the witnesses, and included other witnesses who, when Tobin or the court-appointed investigator contacted them, responded by asking "Who? What? I don't know anything about this. What are you talking about?"

Of the remaining witnesses Washington suggested he might call, two of them eventually testified,[7] one of them, his sister, refused to testify, and others whom Washington never called would have provided, at best, hearsay testimony that would not have supported his defense. For example, three of Washington's proposed witnesses purportedly overheard Noriega "bragging about the burglaries, breaking into lockers, and blaming Mr. Washington." Even if the trial court had admitted this testimony, it is unlikely it would have had much of a mitigating effect on the evidence from surveillance videos at 24 Hour Fitness locations showing that Noriega never entered those locations on the dates of the burglaries, or on Washington's admissions that he used or attempted to use multiple credit cards that did not belong to him or Noriega. Nor did Washington ever explain why he did not attempt to subpoena or call these witnesses, or when, if ever, they would have been available to testify. (See *Jensen v. Superior Court* (2008) 160 Cal.App.4th 266, 271 ["[w]hen a witness is not under subpoena, his or her absence generally does not constitute good cause for the continuance of a trial"].) Indeed, on August 26, 2013 Tobin told the trial court that he intended to call only Washington and the handwriting expert whose testimony the court eventually excluded.

---

[7] Jarvee Hutcherson testified as a character witness and Dee Williams, the manager of the motel where police found Washington, testified that the police had visited Washington's motel room the day before his arrest. Washington contends Williams's testimony supported his theory that the police "planted" evidence in his motel room.

Contrary to Washington's contentions, the evidence shows it was his conduct, not the trial court's denial of his motion for a continuance, that sent his counsel "scrambling" during trial. The trial court did not abuse its discretion by denying Washington's motion for continuance.

3.      *The Denial of the Requested Continuance Did Not Prejudice Washington*

Even if the court erred by denying Washington's motion for a continuance, we will not reverse the judgment unless Washington can show a reasonable probability that the result would have been more favorable had the trial court granted a continuance. (See *People v. Hawkins* (1995) 10 Cal.4th 920, 945 [applying the standard of *People v. Watson* (1956) 46 Cal.2d 818, 836 to determine whether denial of request for continuance prejudiced the defendant]; *People v. Gonzalez* (2005) 126 Cal.App.4th 1539, 1549 [applying the *Watson* standard to the denial of a mid-trial request for continuance].)[8] "[T]he burden to demonstrate prejudice is on the appellant." (*Freeman v. Sullivant* (2011) 192 Cal.App.4th 523, 528.)

Washington argues that several of his proposed witnesses would have supported his version of events and cast doubt on the credibility of the investigating officers. As noted, however, Washington admitted to using credit cards bearing the names of other people, and an investigating officer who reviewed all of the video surveillance evidence from 24 Hour Fitness testified that Noriega did not appear in any of those videos. With respect to the conviction for possession of a controlled substance, police found Washington in a motel room registered in his name sitting on the same bed as the bag of cocaine, and Washington introduced little evidence showing that the police may have

---

[8]      Washington suggests the more stringent harmless error standard of *Chapman v. California* (1967) 386 U.S. 18 applies, but the error he alleges was an error of state law and thus is subject to the harmless error test in *Watson*. (See Cal. Const., art. VI, § 13; *People v. Blakeley* (2000) 23 Cal.4th 82, 89; *People v. Gonzalez, supra,* 126 Cal.App.4th at p. 1549.)

15

planted the drugs. In light of the overwhelming evidence against Washington, any error in denying his request for a continuance was harmless. (See *People v. Jenkins*, *supra*, 22 Cal.4th at p. 958 [no prejudice where denial of continuance had no effect on the judgment]; *People v. Williams* (2009) 170 Cal.App.4th 587, 638 ["given the overwhelming evidence establishing defendant's guilt, we find it not reasonably probable that a more favorable result would have been obtained had the error not been committed"]; cf. *People v. Riggs* (2008) 44 Cal.4th 248, 297 [trial court's decision not to delay trial to allow defendant to bring in witnesses who "would not have provided remotely convincing evidence" was not an abuse of discretion].)

B.  *The Trial Court Did Not Err by Sentencing Washington to Consecutive Terms*

Washington argues that the trial court erred by sentencing him to consecutive terms for each count of identifying information theft committed shortly after the burglary of a 24 Hour Fitness location. He contends that the thefts of various items from lockers at the 24 Hour Fitness locations and the subsequent use of credit cards stolen from those lockers were so closely connected that "one could not be committed without the other." Washington argues that, as a result, his sentence is a "manifest miscarriage of justice."

A trial court has discretion to impose concurrent or consecutive sentences. (*People v. King* (2010) 183 Cal.App.4th 1281, 1323; see *People v. Scott* (1994) 9 Cal.4th 331, 349-350 ["the trial court often has broad discretion to tailor the sentence to the particular case," including whether "to impose consecutive rather than concurrent sentences"].) The trial court's decision "will be affirmed on appeal, so long as it is not arbitrary or irrational and is supported by any reasonable inferences from the record." (*People v. King, supra*, at p. 1323.) "The party attacking the sentence must show the sentencing decision was irrational or arbitrary and if it fails to do so, '"the trial court is presumed to have acted to achieve legitimate sentencing objectives."'" (*Ibid.*)

California Rules of Court, rule 4.425 sets forth the criteria a trial court considers in determining whether to impose consecutive or concurrent sentences, including

16

(1) whether the "crimes and their objectives were predominantly independent of each other"; (2) whether the "crimes involved separate acts of violence or threats of violence"; and (3) whether the "crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior." (Cal. Rules of Court, rule 4.425(a)(1)-(3).) "Only one criterion is necessary to impose a consecutive sentence." (*People v. King*, *supra*, 183 Cal.App.4th at p. 1323.) The fact that the charged offenses resulted in crimes against multiple victims may support consecutive sentences under California Rules of Court, rule 4.425. (*People v. Leon* (2010) 181 Cal.App.4th 452, 468; see *People v. Calhoun* (2007) 40 Cal.4th 398, 408 ["[t]here is no persuasive reason why the trial court should not be allowed to consider the fact of multiple victims as a basis for imposing . . . a consecutive sentence"].)

The court may also consider aggravating circumstances in deciding whether to impose consecutive rather than concurrent sentences, as long as facts the court uses to impose the upper term or to enhance the defendant's prison sentence are not those the court uses to justify imposition of consecutive sentences. (Cal. Rules of Court, rule 4.425(b).) Such circumstances include the defendant's prior convictions, prior prison terms, probation or parole status when the crime was committed, and unsatisfactory performance on probation or parole. (*Id.*, rule 4.421(b)(2)-(5).) As in connection with the criteria listed in California Rules of Court, rule 4.425(a), "[o]nly one criterion or factor in aggravation is necessary to support a consecutive sentence" under California Rules of Court, rule 4.425(b). (*People v. Davis* (1995) 10 Cal.4th 463, 552; see *People v. Scott* (1994) 9 Cal.4th 331, 350, fn. 12 ["one relevant and sustainable fact may explain a series of consecutive sentences"]; *People v. Moberly* (2009) 176 Cal.App.4th 1191, 1197-1198.)

The trial court imposed consecutive sentences for the burglary and identifying information theft counts based on Washington's prior convictions and his performance on probation and parole. At sentencing, Washington did not object to the use of these aggravating factors as a basis for consecutive sentences, nor on appeal does he challenge

his sentence on that basis. Because those factors support consecutive terms, the trial court did not abuse its discretion by sentencing Washington to consecutive terms on the counts for burglary and identifying information theft.

In addition, the court found the burglary and identify theft crimes, and their objectives, were "predominantly independent of each other" because the crimes involved "separate victims" and "separate acts." As the People argued at sentencing, the patrons of the targeted 24 Hour Fitness locations were not the only victims of Washington's crimes. 24 Hour Fitness also suffered as a result of a string of thefts at its various locations. Target and Ralphs were also victims. Thus, the presence of separate victims named in separate counts further supported the trial court's imposition of consecutive sentences. (See *People v. Leon*, *supra*, 181 Cal.App.4th at p. 468.)

C.	*The Trial Court Did Not Err in Sentencing Washington under the Three Strikes Law*

Washington argues that the trial court erred by doubling his sentence on each count pursuant to the three strikes law because the jury did not return a true finding on the allegation that Washington had suffered a prior serious felony conviction within the meaning of section 667, subdivisions (b)-(i). The People do not dispute that the jury failed to make this separate finding, but argue that the jury's findings that Washington suffered a prior conviction in case No. BA324564 and served a prison term for that conviction pursuant to section 667.5, subdivision (b) – the prior prison term enhancement – justified sentencing Washington as a second-strike offender under section 667. In other words, the People contend there was no sentencing error because the jury's findings were sufficient for the court to sentence Washington under the three strikes law.

1.	*Relevant Proceedings*

The People alleged in connection with all counts that Washington's October 30, 2007 conviction for first degree burglary constituted a serious felony under section 667, subdivisions (b)-(i). The three strikes law doubles the prison term for a current felony

18

conviction where the defendant has a prior serious felony conviction "that has been pled and proved." (§ 667, subd. (e)(1).)  The People also alleged that Washington served a prior prison term for his conviction for first degree burglary within the meaning of section 667.5, subdivision (b).[9]  "'[F]or each prior separate prison term served for any felony,'" section 667.5, subdivision (b), imposes an additional year on the sentence imposed for the conviction of a current felony offense.  (*People v. Langston* (2004) 33 Cal.4th 1237, 1240.)

The trial court instructed the jury on both the prior serious felony conviction and the prior prison term allegations.  With regard to the prior serious felony allegation, the court instructed the jury pursuant to CALCRIM No. 3101, in relevant part, as follows: "As to all counts, the People alleged that the defendant has been convicted of a violation of Penal Code section 459 [first degree residential burglary], on October 30th, 2007, in the Los Angeles Superior Court, in case number BA324564 within the meaning of [sections] 667, [subdivisions] (b) through (i), [and] section 1170.12, [subdivisions] (a) through (d). . . .  [¶] [¶]  You may not return a finding that each alleged conviction has been proved beyond a reasonable doubt unless all 12 of you agree on that finding."

With respect to the prior prison term allegation, the court instructed the jury pursuant to CALCRIM No. 3102, in relevant part, as follows:  "You must also decide whether the People have proved that the defendant served a separate prison term for a prior crime and did not remain free of a new felony conviction for five years.  [¶]  To prove this allegation, the People must prove that . . . [t]he defendant served a separate prison term for the crime of first degree residential burglary . . . in violation of [section] 459."

---

[9]     To prove these allegations, the People introduced an exhibit consisting of Washington's record of prior convictions, imprisonment, and parole.  The exhibit included a certified abstract of judgment in case No. BA324564 showing that Washington had been convicted of four offenses, one of which was first degree burglary. Washington did not object to the admission of this exhibit, nor did he introduce any evidence disputing that his prior conviction was for first degree burglary.

The court did not give the jurors a verdict form specifically addressing the allegation that Washington had a prior conviction for first degree burglary that qualified as a serious felony under the three strikes law. On the prior prison term allegation, however, the jury found true the allegation that "pursuant to Penal Code section 667.5, subdivision (b) as to all counts that [Washington] suffered the following prior conviction in case BA324564 date of conviction 10/30/2007 . . . and that a term was served in prison for that offense." The trial court doubled the sentence for each current felony conviction, but the court did not impose or strike the prior prison term enhancement.

2. *The Jury's Findings Supported Sentencing Washington Under the Three Strikes Law*

The verdict form asked the jury to determine whether Washington (1) "suffered the following prior conviction in Case BA324564," and (2) served a prior prison term for that conviction. The jury found both allegations true. Although the jury did not make a specific finding that Washington suffered a prior conviction for first degree burglary, the jury necessarily found that he did. The court's instruction on the prior prison term enhancement required the jury to decide whether the People proved that Washington served a prison term for first degree burglary. The court's instruction on the prior serious felony allegation informed the jury that Washington's alleged conviction for first degree burglary occurred in case No. BA324564. We presume the jury understood and followed the court's instructions in the absence of evidence to the contrary. (*People v. Williams*, *supra*, 170 Cal.App.4th at p. 635; accord, *People v. Johnson* (2015) 61 Cal.4th 734, 770.) Thus, when the jury found true the allegation that Washington "suffered the following prior conviction in Case BA324564 . . . and that a term was served in prison for that offense," the jury must have found that Washington had previously been convicted of first degree burglary.

*People v. Williams* (2002) 99 Cal.App.4th 696 (*Williams*), though not identical to this case, is instructive. There the People alleged the defendant suffered five prior serious felony convictions under section 1170.12, and two prior serious felony convictions under

20

section 667, subdivision (a). (*Williams*, *supra*, at p. 699.) One of the convictions alleged as a prior serious felony conviction under section 667, a 1992 conviction for burglary, also provided the basis for a strike under section 1170.12. (*Williams*, *supra*, at p. 699.) The jury found true the prior serious felony allegation under section 1170.12, but "failed to return a verdict form for the enhancement alleged under section 667." (*Williams*, *supra*, at pp. 699-700.) The trial court nevertheless imposed a five-year enhancement under section 667, subdivision (a), for the 1992 burglary. (*Williams*, *supra*, at p. 700.) The court in *Williams* held that the jury's finding that the defendant had suffered a prior serious felony conviction under section 1170.12 supported the sentence under section 667 because "both enhancements [were] based upon the same prior conviction." (*Williams*, *supra*, at p. 700.) The court further held that, "although the jury's finding was made in a verdict form which designated it as an enhancement pursuant to section 1170.12, it nevertheless encompassed the requisite fact necessary to support the enhancement under section 667, subdivision (a)(1)." (*Williams*, *supra*, at pp. 700-701.)

Here, the jury found that Washington suffered a prior conviction for burglary in case No. BA324564 in connection with a prior prison term enhancement based on the same conviction. The jury's finding "encompassed the requisite fact necessary to support" the enhancement for a prior serious felony conviction. (*Williams*, *supra*, 99 Cal.App.4th at pp. 700-701.)[10] Although Washington argues that *Williams* is distinguishable because in this case, unlike *Williams*, "[t]he jury made no finding whatsoever as to a specific felony conviction", the jury here found that "[Washington] suffered the . . . prior conviction in Case BA324564," which under the court's instructions was a prior conviction for first degree burglary.

Once the jury determined that Washington had suffered a prior conviction, the court could properly conclude that Washington suffered a prior serious felony conviction and sentence Washington under the three strikes law. The question whether a first degree

_____

[10] Washington does not argue that the jury failed to find the requisite facts for imposing the prior prison term allegation, and he appears to concede that the jury found a prior conviction in connection with that allegation.

21

burglary conviction qualifies as a "serious felony" for purposes of the three strikes law is purely legal and implicates no questions of fact for the jury. (*People v. McGee* (2006) 38 Cal.4th 682, 694; see *People v. Kelii* (1999) 21 Cal.4th 452, 456 ["[i]f a defendant's prior conviction falls into [the list of felonies enumerated in section 1192.7, subdivision (c)], and the elements of the offense have not changed since the time of that conviction, then the question whether that conviction qualifies as a serious felony is entirely legal"]; *Williams*, *supra*, 99 Cal.App.4th at pp. 700-701 ["[l]egal questions, such as whether . . . a prior felony conviction qualifies as a 'serious felony' under the Three Strikes law, are matters to be determined by the court"].) Unlike crimes that count as a "strike" only when committed under certain circumstances, "any burglary of the first degree" qualifies as a "serious felony." (§ 1192.7, subd. (c)(18); see *People v. McGee*, *supra*, at p. 694 [first degree burglary is a "per se serious felon[y]"].) The fact that the court did not expressly state on the record that Washington suffered a prior serious felony conviction did not limit its authority to sentence Washington as a second strike offender. (See *Williams*, *supra*, at p. 701 [the trial court "impliedly made" the finding that defendant's prior conviction was a serious felony when the court sentenced defendant under section 667, subdivision (a)].) Thus, the court did not err by doubling Washington's sentences under the three strikes law.

D. *The Trial Court Erred by Not Imposing or Striking the Prior Prison Term Enhancement*

The People request that we remand this matter to the trial court because the court failed to impose or strike the prior prison term enhancement despite the jury's verdict that Washington served a prior prison term. The People argue that "the instant matter should be remanded to the trial court so that it may either impose or strike the prior prison term enhancement."

The People are correct. "Once the prior prison term is found true within the meaning of section 667.5(b), the trial court may not stay the one-year enhancement, which is mandatory unless stricken." (*People v. Langston*, *supra*, 33 Cal.4th at p. 1241;

22

see *People v. Garcia* (2008) 167 Cal.App.4th 1550, 1561 ["[t]he enhancement language in section 667.5 is mandatory unless the additional term is stricken"]; *People v. Campbell* (1999) 76 Cal.App.4th 305, 311 ["assuming the prison priors are proven, the court must either impose the prior prison enhancements or strike them"].)  Where, as here the trial court does not strike or impose the enhancement, the reviewing court should remand for the trial court to either strike or impose the enhancement.  (See *People v. Chavez* (2012) 205 Cal.App.4th 1274, 1276 [remanding "to allow the court to exercise its discretion either to strike or to impose the enhancements" under 667.5, subdivision (b), because such "enhancements must be either imposed or stricken"]; *People v. Bradley* (1998) 64 Cal.App.4th 386, 391-392 [trial court's failure to impose or strike prior prison term enhancement required remand].)  Washington does not argue otherwise.  Therefore, we remand the matter for the trial court to exercise its discretion to strike or impose the prior prison term enhancement.[11]

E.    *The Trial Court Must Correct the Abstract of Judgment To Reflect its Oral Pronouncement of Judgment on Count 16*

The rendition of judgment is an oral pronouncement that "always prevails over the abstract of judgment." (*People v. Urke* (2011) 197 Cal.App.4th 766, 779; see *People v. Mesa* (1975) 14 Cal.3d 466, 471.)  The "abstract of judgment '"cannot add to or modify the judgment which it purports to digest or summarize."'" (*People v. Urke*, *supra*, at p. 779.)  Here, the abstract of judgment does not reflect the trial court's oral pronouncement of sentence on count 16 for grand theft.  At sentencing, the trial court imposed and stayed the sentence on count 16.  The minute order correctly reflects the court's oral pronouncement, but the abstract of judgment states that the sentence on count

---

[11]    The dual use prohibition does not apply here because the three strikes law is an alternative sentencing scheme, not a sentence enhancement.  (*People v. Cressy* (1996) 47 Cal.App.4th 981, 991; see *People v. White Eagle* (1996) 48 Cal.App.4th 1511, 1518 ["[t]he drafters of Three Strikes law have clearly provided that its punishment provisions apply 'in addition to any other enhancement or punishment provisions which may apply,'" italics omitted].)

23

16 is to run concurrently.  Thus, the trial court must prepare an amended abstract of judgment to correct this error.

## DISPOSITION

The judgment is affirmed in part, reversed in part, and the case is remanded with directions to strike or impose the prior prison term enhancement.  The trial court is to prepare an amended abstract of judgment reflecting the trial court's oral pronouncement of the sentence for count 16 and to forward it to the Department of Corrections and Rehabilitation.


SEGAL, J.

We concur:



ZELON, Acting P. J.



GARNETT, J.[*]

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.